IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | | |
|---|---|---|
| Julia Riley, | ) | Case No.: 4:19-cv-01664-JD-TER |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | **ORDER & OPINION** |
| South Carolina Department of Corrections | ) | |
| and Willie L. Eagleton, in his individual and | ) | |
| official capacity, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

This matter is before the Court with the Report and Recommendation ("Report and Recommendation" or "Report") of United States Magistrate Judge Thomas E. Rogers, III, made in accordance with 28 U.S.C. § 636(b)(1)(B) and Local Civil Rule 73.02(B)(2) of the District of South Carolina.[1]  Plaintiff Julia Riley ("Plaintiff" or "Riley") filed a lawsuit against Defendants South Carolina Department of Corrections ("SCDC") and Warden Willie L. Eagleton ("Eagleton") in his individual and official capacity (SCDC and Eagleton collectively "Defendants") alleging *inter alia* causes of action for hostile work environment and retaliation in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000(e) et seq. (DE 58, p. 1.)  Defendants filed a Motion for Summary Judgment contending *inter alia* that Plaintiff, a former corrections officer with SCDC, failed to establish a prima facie case of discrimination and failed to establish that Defendants took an adverse employment action against her. (DE 29-1, pp. 10-20.)  For the

---

[1] The recommendation has no presumptive weight, and the responsibility for making a final determination remains with the United States District Court. See Mathews v. Weber, 423 U.S. 261, 270-71 (1976).  The court is charged with making a de novo determination of those portions of the Report and Recommendation to which specific objection is made.  The court may accept, reject, or modify, in whole or in part, the recommendation made by the magistrate judge or recommit the matter with instructions. 28 U.S.C. § 636(b)(1).

1

reasons set forth herein, the Court adopts the Report and Recommendation as modified herein and grants in part and denies in part Defendants' Motion for Summary Judgment.[2]  (DE 29.)

## BACKGROUND

A full recitation of Plaintiff's allegations is set forth in the Report, which the Court adopts. However, given the objections raised by Defendants and for the sake of brevity, the following summary of facts is sufficient for the matters addressed herein.

Riley brought this case based on three alleged instances of gender-based discrimination and the alleged retaliatory actions taken by Defendants.  The first alleged instance of sex discrimination occurred on January 14, 2017, when Riley, while working at Evans Correctional Institution ("ECI"), was sexually assaulted twice by Sgt. Ivan Rivers ("Rivers").[3]  (DE 58, p. 2.) Plaintiff immediately reported the sexual assault to SCDC staff, and she was instructed to file a sexual harassment complaint Form 16-111 and an incident report.  Plaintiff turned in her incident report to Eagleton but he did not provide her with a Form 16-111.  Plaintiff made other unsuccessful attempts to get Form 16-111 from Eagleton after the incident; however, she finally obtained the form through other SCDC staff and completed it.[4]

---

[2]     Plaintiff has also alleged pregnancy discrimination and retaliation claims in violation of Pregnancy Discrimination Act of 1978 (PDA), 42 U.S.C. § 2000e(k), an invasion of privacy cause of action, and a gross negligence cause of action.  As neither Plaintiff or Defendants have objected to these claims, the Court adopts the Report on these claims and dismisses them without further explanation.

[3]     The parties dispute whether Rivers was Plaintiff's supervisor or if he was simply Plaintiff's coworker.  Since neither party has developed the record on this issue, there is a genuine issue of material fact in dispute regarding River's supervisor status; and therefore, Defendants' Motion for Summary Judgment cannot advance.

[4]     When Riley turned in her Incident Report to Eagleton and attempted to obtain a sexual harassment complaint form ("Form 16-111"), Eagleton instead photocopied her incident report and passed it around to several other people.  (DE 58, p. 3.)  Riley contacted the Employment Assistance Program ("EAP") requesting that they contact Eagleton on her behalf for a Form 16-111; however, Eagleton again failed to provide Riley with the Form 16-111.  (DE 58, pp. 3-4.)  Riley was finally able to obtain a Form 16-111 from the SCDC employee relations secretary on January 19, 2017; however, Eagleton still failed to report the incident SCDC headquarters.  (DE 58, p. 4.)

After the alleged incident, Riley had no further contact with Rivers in part because Plaintiff was out on Family Medical Leave due to the incident until April 8, 2017, and Rivers was out on Assault Leave from February 1, 2017, until August 2, 2017, after being attacked by three inmates on February 1. Thereafter, Rivers remained on personal leave until he was terminated in January 2018 for failure to return to work. (DE 58, p. 5.)

Over the subsequent months, Riley submitted her first EEOC Charge of Discrimination on September 8, 2017. (DE 58, pp. 5-6.) After review, the South Carolina Human Affairs Commission ("SCHAC") issued a "no cause" finding on September 21, 2018. In addition, on November 17, 2017, Human Resources informed Riley that her sexual harassment/hostile work environment case was turned over to Police Services who, after an investigation, referred the case to Warden Donnie Stonebreaker for review and appropriate action. Subsequently, no further action was taken, but her complaint remained on file. (DE 58, p. 6.) During this timeframe, Riley was promoted twice in October and December of 2017. Notwithstanding her promotion, Plaintiff claims that she suffered adverse employment action because she was assigned to work shifts lasting over twenty-four hours, and was removed from serving as a shift unit counselor that worked weekdays from 11:00 to 7:00 with all weekends and holidays off, to being on a twelve-hour swing shift ("Job Reassignment" allegations) Accordingly, on March 16, 2018, she filed another internal hostile work environment claim, which was resolved three months later. (DE 58, p. 7.) However, in the interim Riley filed her second EEOC Charge of Discrimination.[5] After review, SCHAC issued another "no cause" finding. (DE 58, p. 7.)

---

[5] In her second EEOC charge, Riley alleged *inter alia* that since the filing of her first Charge of Discrimination, she continued to be subject to a hostile work environment, she was accused of sleeping with inmates and bringing contraband into the prison, and had her office searched. Additionally, she alleged that on March 15, 2018, she was forced to relocate and was physically escorted from her post in Cheraw Unit to the Santee Unit, the location of her sexual assault. (DE 58, p. 7.)

Riley's third discrimination allegation stems from two staff briefings where during the first staff briefing, assistant warden Kenneth Nelson ("Nelson") pointed at Riley insinuating that Riley was bringing in contraband. (DE 58, p. 7.) After feeling like she was being accused in front of the entire shift and administration, Riley confronted Nelson in the subsequent briefing. The confrontation escalated, and Riley was eventually told to leave. As a result, Riley was suspended for 5 days, and she filed two more internal complaints and her third EEOC Charge of Discrimination. The charges were ultimately dismissed, and Riley resigned on March 15, 2019.

## DISCUSSION

Although Plaintiff has filed an objection to the Report (DE 59), to be actionable, objections to the Report and Recommendation must be specific. Failure to file specific objections constitutes a waiver of a party's right to further judicial review, including appellate review, if the recommendation is accepted by the district judge. See United States v. Schronce, 727 F.2d 91, 94 & n.4 (4th Cir. 1984). "The Supreme Court has expressly upheld the validity of such a waiver rule, explaining that 'the filing of objections to a magistrate's report enables the district judge to focus attention on those issues -- factual and legal -- *that are at the heart of the parties' dispute*.'" Diamond v. Colonial Life & Accident Ins. Co., 416 F.3d 310, 315 (2005) (citing Thomas v. Arn, 474 U.S. 140 (1985) (emphasis added)). "A general objection to the entirety of the magistrate judge's report is tantamount to a failure to object." Tyler v. Wates, 84 F. App'x 289, 290 (4th Cir. 2003). "Likewise, a mere restatement of the arguments raised in the summary judgment filings does not constitute an "objection" for the purposes of district court review." Nichols v. Colvin, 100 F. Supp. 3d 487 (E.D. Va. 2015). In the absence of specific objections to the Report and Recommendation of the magistrate judge, this court is not required to give any explanation for adopting the recommendation. See Camby v. Davis, 718 F.2d 198, 199 (4th Cir. 1983).

Plaintiff makes three main "objections" to the Report, which the Court will discuss *seriatim*. First, Defendants contend the Report misapplied Federal law when it concluded that Riley's Job Reassignment allegations and its proximity to her filing several complaints are sufficient to create a prima facie case of retaliation. (DE 59, pp. 9-10.) In support thereof, Defendants argue that Riley was the beneficiary of career advancement as opposed to an adverse action and that SCDC had legitimate reasons for Riley's change in hours and suspension. (DE 59, p. 9.) The Report correctly recognized material fact dispute and applied Federal law stating,

> In the context of job reassignment allegations ... the Supreme Court has stated that, although a job reassignment is 'not automatically actionable,' it may be 'materially adverse depend[ing] upon the circumstances of the particular case, and should be judged from the perspective of a reasonable person in the plaintiff's position, considering all the circumstances." Williams v. Prince Williams Cty., Va., 645 F. App'x 243, 245 (4th Cir. 2016) (quoting Burlington, 548 U.S. at 71).

(DE 58, p. 20.) Since there are genuine issues of material facts in dispute regarding whether a reasonable person in Plaintiff's position would consider her Job Reassignment allegations coupled with her suspension to be materially adverse, summary judgment is not appropriate here. Accordingly, this Court overrules Defendants' objection.

Second, Defendants contend the Report fails to distinguish whether Rivers was Riley's supervisor or co-worker to determine if the alleged harassment at issue is imputable to SCDC, and Riley has offered no evidence that SCDC was negligent in its control over the correctional facility. (DE 59, p. 14.) While the gravamen of Defendants' objection is sound, its foundation is flawed because Defendants' motion for summary judgment failed to raise this distinction or establish an undisputed record regarding Rivers' co-worker vis-à-vis supervisor status with Riley. See also n. 3, supra. Furthermore, Defendants' objection ignores material facts in dispute regarding SCDC's response when Riley reported the incident. See n. 4, supra. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538 (1986) ("[O]n

summary judgment the inferences to be drawn from the underlying facts ... must be viewed in the light most favorable to the party opposing the motion.")  Assuming *arguendo* that Rivers was Riley's co-worker, "the employer may be liable in negligence if it knew or should have known about the harassment and failed to take effective action to stop it."  Ocheltree v. Scollon Prods., 335 F.3d 325, 333-34 (4th Cir. 2003).  Although the Report does not consider this standard of review, the facts in this case show that Defendants are not entitled to summary judgment even under this standard given Eagleton's conduct when the event was reported to him coupled with the timing and reasons for the employment action taken against Rivers.  (See DE 58, p. 17, n 10.)

> An employer cannot avoid Title VII liability for coworker harassment by adopting a 'see no evil, hear no evil' strategy.  Knowledge of harassment can be imputed to an employer if a 'reasonable [person], intent on complying with Title VII,' would have known about the harassment. (citation omitted) Under this rule an employer may be charged with constructive knowledge of coworker harassment *when it fails to provide reasonable procedures for victims to register complaints*.

Ocheltree v. Scollon Prods., 335 F.3d 325, 334 (4th Cir. 2003) (emphasis added)  Defendants' post sexual assault conduct (or lack thereof) affirms the Report's conclusion that there are facts in dispute concerning the actions taken by SCDC to determine if the harassment is imputable to SCDC.  Therefore, this Court overrules this objection and modifies the Report as provided herein.

Lastly, Defendants object to the Report contending that Riley failed to meet her burden in showing that the alleged harassment created a hostile work environment.  In particular, Defendants assert that the frequency of the conduct demonstrates the alleged harassment was a single, isolated incident, and Riley experienced no negative impact on her work performance.  The Court again finds this objection to be unconvincing because a reasonable jury could find Defendants' actions created an abusive environment, and thus there are material facts in dispute.  (DE 59, pp. 17-18.)  In the instant case, Plaintiff must show that she suffered from harassment that was (a) unwelcome, (b) based on a protected status, (c) sufficiently severe or pervasive to alter the conditions of her

employment and create an abusive atmosphere, and (d) imputable to the employer.  See EEOC v. C. Wholesalers, Inc., 573 F.3d 167, 175 (4th Cir. 2009). "[T]he objective severity of harassment should be judged from the perspective of a reasonable person in the plaintiff's position, considering all the circumstances." Oncale v. Sundowner Offshore Servs., Inc., 523 U.S. 75, 81, 118 S.Ct. 998, 140 L.Ed.2d 201 (1998).

To determine if the harassment is sufficiently severe or pervasive to rise to the level of a hostile work environment courts look at "(1) the frequency of the discriminatory conduct; (2) its severity; (3) whether it is physically threatening or humiliating, or a mere offensive utterance; and (4) whether it unreasonably interferes with an employee's work performance." Smith v. First Union Nat'l Bank, 202 F.3d 234, 242 (4th Cir.2000).  Although the record indicates that the sexual assault occurred on a single day, it included several assaults on the same day.  In addition, Riley took multiple days off as a result of the incident and was reluctant to work the Santee Unit, the location of her sexual assault.  Moreover, assuming *arguendo* Riley's alleged harassment was a single, isolated incident and she experienced no negative impact on her work performance, considering these two factors in the totality of the circumstances, a reasonable person in the Plaintiff's position could conclude that Defendants' actions were sufficiently severe or pervasive to alter the conditions of her employment and create an abusive atmosphere.  Therefore, Defendants' objection is overruled.

Accordingly, after a thorough review of the Report and Recommendation and the record in this case, the Court adopts the Report and Recommendation (DE 58) and incorporates it herein as modified, and grants in part and denies in part Defendants' Motion for Summary Judgment. The Motion for Summary Judgment is granted as to Plaintiff's pregnancy-related discrimination and retaliation causes of action, invasion of privacy cause of action, gross negligence cause of

action, and all Title VII claims asserted against Defendant Eagleton. However, the Motion for Summary Judgment is denied as to Plaintiff's hostile work environment cause of action and her sexual assault-related retaliation cause of action.

It is, therefore, **ORDERED** that Defendants' Motion for Summary Judgment (DE 29) is granted in part and denied in part.

**IT IS SO ORDERED**.

Joseph Dawson, III
United States District Judge

Greenville, South Carolina
September 3, 2021